# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                          Case No. 04-12654-DHW
                                                               Chapter 7

RACHEL TURNER SMITH,

      Debtor.

_____

BANKTRUST OF ALABAMA,

     Plaintiff,

v.                                                             Adv. Proc. No. 04-01320-DHW

RACHEL TURNER SMITH,

     Defendant.

## MEMORANDUM OPINION

On December 28, 2004, Banktrust of Alabama (hereinafter "Banktrust") filed this adversary proceeding seeking a determination that its claim against Rachel Turner Smith (hereinafter "Smith") is not dischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). Trial was held on June 22, 2005, in Dothan, Alabama. At trial the plaintiff was represented by Jimmy S. Calton, and the defendant was represented by Donald J. McKinnon.

### Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from the United States District Court for this district's general order of reference referring title 11 matters to this court. Further, because a complaint to determine the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), the court's jurisdiction is extended to the entry of a final order or judgment.

## Findings of Fact

On November 4, 2002, Smith opened a checking account at Banktrust. *See* Plaintiff's Ex. 4.   Smith's sole purpose in establishing the account was to permit the direct deposit of her monthly Social Security disability benefit, which had been awarded to her a few months earlier.

On October 20, 2003, Banktrust received a wire transfer from Southtrust Bank totaling $10,729.83. *See* Plaintiff's Ex. 3.[1] These funds were intended for deposit into the account of one of Banktrust's commercial customers. Instead, on October 22, 2003, Banktrust deposited the money erroneously into Smith's checking account.

Banktrust mailed Smith a copy of a deposit slip evidencing the $10,729.83 deposit. *See* Plaintiff's Ex. 6. Upon receipt of the deposit slip, Smith called the bank to inquire as to the source of the deposited funds. A person in the bank's bookkeeping department told Smith that the source of the money could not be determined from the information at hand but that it appeared that the money was legitimately in Smith's account and belonged to her.

On October 24, 2003, two days after the erroneous deposit was made, Smith wrote two checks totaling $10,000. *See* Plaintiff's Ex. 2. One of the checks was payable to cash in the amount of $6,000. A few days after negotiating the $6,000 check, Smith went to a gaming casino in Biloxi, Mississippi.

The other check for $4,000 was made payable to Smith's sister, Verdell Grubbs. Smith wrote the word "loan" on the face of the check. Despite the implication, there was no loan to Grubbs. Rather, Smith's daughter needed money to repay one of her (the daughter's) loans. Smith gave the $4,000 check to Grubbs because Grubbs was able to cash the check locally and deliver the money to Smith's daughter who lived out of state.

About three months later, Banktrust was notified by its commercial customer that its account had never been credited with the $10,729.83 deposit.

---

[1] Eufaula Bank & Trust Co. is the predecessor of Banktrust.

2

Upon investigation, Banktrust learned of its mistake. It restored the money to the account of the rightful customer and notified Smith of the error.

Over the next several months, Banktrust made contact with Smith endeavoring to recover all or a portion of the funds. *See* Plaintiff's Ex. 7 and 8. By the time Smith filed her bankruptcy petition on November 19, 2004, she had not repaid any of the funds erroneously deposited into her account.

Smith testified that she believed that the $10,729.83 deposited into her account by the bank could have been an additional payment by the Social Security Administration on her disability claim.

Smith had filed the disability application on January 27, 2001. On July 9, 2002, the Social Security Administration found, *inter alia*, that Smith was entitled to benefits and further that she had become disabled effective March 1994. *See* Plaintiff's Ex. 1.

Thereafter, Smith received a monthly social security benefit of about $818. As stated *supra*, she established the Banktrust account to receive this monthly payment via direct deposit.

In addition to the monthly benefit, Smith was awarded and paid a $25,000 lump sum benefit for the two-year period preceding her January 2001 application. Although Smith's disability dated back to 1994, under Social Security Administration regulations, she could only receive compensation for the two-year period immediately preceding her application for benefits.

Smith testified that she made her original application for Social Security benefits in 1994 when she first became disabled. Under this scenario, she would have been entitled to back payment of benefits to that date. The Social Security Administration, however, found no record of Smith's alleged earlier application. Smith admitted that she never received any notification from the Social Security Administration that she would receive an additional lump sum benefit.

3

## Conclusions of Law

Banktrust contends that Smith, by negotiating the two checks withdrawing the erroneously deposited funds, committed fraud and that its claim against her is nondischargeable under § 523(a)(2)(A). Further, Banktrust contends that Smith willfully and maliciously caused injury to its property and that its claim is non-dischargeable under § 523(a)(6).

Banktrust has the burden of proving the nondischargeability of its claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Further, exceptions to discharge are to be strictly construed to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164-65 (11th Cir. 1995).

## 11 U.S.C. § 523(a)(2)(A) Fraud

A debt is not discharged to the extent obtained by fraud. The exact text of the statute provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by__
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

In order to establish fraud under § 523(a)(2)(A) the plaintiff must prove each of four elements by a preponderance of the evidence. Plaintiff must prove (1) that the debtor made a false representation to deceive the creditor; (2) that the creditor relied on the misrepresentation; (3) that the reliance was justified; and (4) that the creditor sustained a loss as a result of the misrepresentation. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998); *Fuller v.*

4

*Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11ᵗʰ Cir. 1996). Further, it is justifiable reliance, rather than the more stringent reasonable reliance or the more lenient actual reliance, that is the standard in § 523(a)(2)(A) litigation. *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 281 (11ᵗʰ Cir. 1995).

In this case, by drawing the two checks on her account at the bank, Smith made no representation to Banktrust – much less one with the intent to deceive. The Supreme Court has held, in interpreting a criminal statute, that a false statement is not made by the giving of a check. Justice Blackmon explained that ". . . a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.' . . . [A] check is simply 'a draft drawn on a bank and payable on demand.'" *Williams v. United States*, 458 U.S. 279, 284-85, 102 S. Ct. 3088, 3091-92, 73 L. Ed. 2d 767 (1982). However, even if the drawing of a check constituted a representation, that representation would run to the payee – not to the bank on which the check is drawn.

Instead of factual representations, as drawer of these two checks, Smith made certain implied warranties to her transferees, her sister on one check and herself on the other made payable to cash. *See Ala. Code* § 7-3-416 (1975). None of these warranties, however, run to the bank. But even if they did, they were extinguished when the checks were honored by Banktrust.

But as the presenter of the check made payable to cash, Smith did make implied warranties to the bank. *See Ala. Code* § 7-3-417 (1975). A presenter warrants to the drawee that 1) there are no missing endorsements, 2) there is no alteration of the instrument, and 3) there is no forgery of the drawer's signature. None of these warranties were breached by Smith.

Hence, by writing the two checks, which effectively withdrew the mistakenly deposited funds, Smith did not make a false representation to Banktrust with the intent to deceive. Failing to prove this element of fraud, Banktrust cannot prevail on its claim under § 523(a)(2).

### 11 U.S.C. 523(a)(6) Willful and Malicious Injury

A debt for the willful and malicious injury to the property of another

entity is not dischargeable.  The statute provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6).

Under the willful and malicious exception, the injury must be both willful and malicious:  both terms modify injury.  "Willful" means deliberate or intentional.  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S. Ct. 974, 977 (1998).  To be nondischargeable, the debtor must intend to injure another entity or his property.[2]  *Id.* at 61.  Willful does not encompass a recklessly or negligently inflicted injury.  *Id.* at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'"  *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

"Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights."  *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir. 1995).   But not every tort of conversion falls within the purview of 11 U.S.C. § 523(a)(6).  "[I]nnocent or technical" conversion of a person's property does not lend itself to a finding of a willful and malicious injury for dischargeability purposes.  *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S. Ct. 151, 153, 79 L. Ed. 393 (1934).  To be nondischargeable, the resulting injury must have been deliberate and intentional.  A negligent or reckless conversion would not fall within the statutory exception. "[A] willful and malicious injury does not follow as of

---

[2] It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act.  *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995).

6

course from every act of conversion, without reference to the circumstances." *Davis,* 293 U.S. at 332.

One federal appellate court has opined that when conversion is at issue under § 523(a)(6), "nondischargeability turns on whether the conduct is (1) headstrong and knowing ("willful") and, (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American/Business Credit, Inc v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985).

In the instant case, two circumstances militate in the debtor's favor. When Smith received the deposit slip in the mail, she immediately called the bank and inquired as to the source of the deposited funds. Secondly, Smith entertained a hope, however unfounded, that the Social Security Administration would pay her an additional lump sum benefit.

On the other hand Smith's telephoning the bank regarding the source of the deposit shows that she had doubt as to her ownership of this money. Further, no one at the bank definitively told her the source of the funds. To the contrary, Smith was told by the bank's bookkeeping employee that the source of the deposit could not be ascertained from the records immediately available.

In addition, the day after learning that the funds had been placed into her account, Smith withdrew the money by writing the two checks which are in evidence here. The timing of the withdrawals gives the appearance that Smith snapped the money up before the mistake could be found and corrected.

Finally, Smith never received any notice from the Social Security Administration that she had been awarded an additional lump-sum benefit. Neither did she attempt to contact the Social Security Administration after learning that her account had been credited with these funds. Her failure to verify the deposit with the Social Security Administration casts doubt on the integrity of her belief.

Weighing all of these circumstances, the court concludes that Smith knew that these funds were deposited into her account in error and that they did not belong to her. It follows, that by drawing these funds in the form of personal

checks, Smith deliberately and intentionally converted the property of the bank.

## Conclusion

For the foregoing reasons Banktrust of Alabama's claim against Rachel Turner Smith is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Pursuant to Fed. R. Bankr. Pro. 9021 a separate judgement will enter consonant with this opinion.

Done this the 29th day of July, 2005.


/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Jimmy S. Calton, Attorney for Plaintiff
   Donald J. McKinnon, Attorney for Defendant

8